TERRENCE M. JACKSON
Nevada Bar No.: 0854
Law Office of Terrence M. Jackson
624 South Ninth Street
Las Vegas, NV 89101
(702) 386-0001 / Fax: (702) 386-0085

*Counsel for Harold Call*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                               )<br>               Plaintiff,                       )<br>                                               )<br>       vs.                                      )<br>                                               )<br>HAROLD CALL,                              )<br>                                               )<br>               Defendant.                  )<br>_____) | Case No.:2:09-cr-00079-KJD (RJJ)<br><br>**MOTION TO DISMISS** |

**Certification**: This motion is timely filed.

   COMES NOW the Defendant, HAROLD CALL, by and through his attorney, Terrence M. Jackson, and hereby moves to dismiss Counts 1, 2, 4, and 5 of the Indictment charging him in Counts 1 and 4 with Possession and Transfer of a Machine Gun, and Counts 2 and 5 with Possession of an Unregistered Machine Gun.

   As grounds for this motion, Defendant asserts the court is without jurisdiction to proceed under 18 U.S.C. 922 (o) or 18 U.S.C. 921(a)(23) for mere possession of a homemade machine gun that has not traveled in interstate commerce.

   As further grounds for this motion, Defendant asserts that the Second Amendment of the United States Constitution guarantees that a citizen of the United States who has never been convicted of a felony has the right to personal self defense and the Congress cannot deprive the Defendant of the right to possess a machine gun.

   This motion is further based upon the accompanying Points and Authorities incorporated herein and such further facts as will come before the court on a hearing on this motion.

## I. FACTUAL STATEMENT

Defendant, Harold Call, indicted on March 3, 2009, for five counts involving illegal weapon possession and illegal weapon transfer.

This occurred after a three (3) year investigation of the defendant and other individuals who belonged to the Sovereign Nation movement.

The investigation eventually targeted Harold Call after he became the chairman of the Nevada Lawman Group, adherents of many political and economic beliefs of the Sovereign Nation movement. The government, through use of paid undercover informants, arranged to entice Call into hand making several machine gun parts; i.e., "auto sears" and "lightning links," used in converting legal weapons to automatic weapons, now designated to be illegal. After repeated requests by the informants/ agents, Harold Call produced the parts and accepted a very modest fee for his time in making and producing the parts.

Harold Call also, after repeated urging from the informant, brought his World War II relic "Sten" gun to a shooting session with the informant CH 2 on or about September 11, 2008. This sten gun was later recovered during the search pursuant to warrant on March 5, 2009. Defendant has challenged the validity of that search in a separate motion. (Dkt. # 17).

## II. THE LAW

**A.** CONGRESS CANNOT UNDER THE COMMERCE CLAUSE CRIMINALLY PUNISH THE MERE POSSESSION, OR SALE NOT FOR PROFIT, OF A HOMEMADE MACHINE GUN OR THE COMPONENT PARTS OF SUCH A MACHINE GUN.

The United States Supreme Court has recently found that congressional power under the commerce clause is not limitless. We must be mindful of these limits so as not to: " ... obliterate the distinction between what is national and what is local and create a completely centralized government." United States v. Lopez, 514 U.S. 549, at 557, 115 S. Ct. 1624 (quoting NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 81 L. Ed. 893 (1937)).

/ / /

Lopez noted that there are three (3) categories of activity that Congress can regulate under it's commerce power:

> (1)  "the use of the channels of interstate commerce,"
> (2)  "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.",
> (3)  "those activities having a substantial relationship to interstate commerce."
>
> U.S. v. Lopez, 514 U.S. 549, 558-59 (1995).

In United States v. Rambo, 74 F.3d 948 (9th Cir. 1996) the Ninth Circuit held that section 922(o) of 18 U.S.C. 1922 was " a regulation of the use of the channels of interstate commerce " because " there can be no unlawful possession under 922(o) without an unlawful transfer." Id. 962.

More recently, in United States v. Stewart, 348 F.3d 1132 (9th Cir. 2003), the Ninth Circuit revisited the logic and holding of Rambo, supra, finding that Congress could not under its commerce clause power prohibit the mere possession of homemade machine guns. Robert W. Stewart sold parts kits for the manufacture and assembly of Maudi Griffin .50 caliber rifles which he advertised on the internet and in Shotgun News, a national firearms magazine.

An agent, acting undercover, purchased one of Stewart's kits and determined it could be "readily converted" into an unlawful firearm in violation of 18 U.S.C. §922(a)(1)(A) and § 921(a)(3)(A). Based on this information the ATF agent secured a federal search warrant for Stewart's residence. The resulting search yielded 31 firearms including four machine guns. The machine guns had been machined and assembled by Stewart. Stewart was charged and convicted of felony possession of firearms in violation of 18 U.S.C. 922(g)(1) and 924(a)(2) and five counts of unlawful possession of machine guns in violation of 18 U.S.C. 922(o).

The Ninth Circuit Court of Appeals reversed his conviction for possession of the homemade machine guns overruling Rambo stating:

> "Rambo thus held section 922(o) was a valid exercise of the commerce power because a transfer or sale must have preceded the criminalized possession. Stewart's case reveals the limits of Rambo's logic. Contrary to Rambo's assumption that an unlawful transfer must precede unlawful possession, Stewart did not acquire his machine guns from someone else.

> **He fabricated them himself**. The government has never contested Stewart's claim that the machine guns were entirely homemade, and the evidence supports his claim."
> Id. 1135, 36.  (Emphasis added)

The Court recognized that even if some of the machine gun parts had moved in interstate commerce, that alone was insufficient for commerce clause jurisdiction.

> " Indeed, some of the machine gun parts did move in interstate commerce. At some level, of course, everything we own is composed of something that once traveled in commerce. This cannot mean that *everything* is subject to federal regulation under the Commerce Clause, else that constitutional limitation would be entirely meaningless. As Lopez reminds us, Congress's power has limits, and we must be mindful of those limits so as not to " 'obliterate the distinction between what is national and what is local and create a completely centralized government.' " Lopez, 514 U.S. at 557, 115 S.Ct. 1624 (quoting NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893 (1937)).  Our sister circuits have also recognized that section 922(o) must have certain implicit limits, noting that, "because § 922(o) has no jurisdictional element, it has the potential to criminalize the possession of such guns that have never traveled in interstate commerce." United States v. Wright, 117 F.3d 1265, 1270 (11th Cir. 1997), *vacated in irrelevant part by* 133 F.3d 1412 (11th Cir. 1998). The difficult question is where to draw the line between a regulated object and the matter from which that object was created." Id. 1136

The court continued:

> Because these firearms were genuinely homemade, we find that Stewart did not obtain his machine guns by "us[ing] the channels of interstate commerce." Thus, although Rambo found section 922(o) to be generally valid under the Commerce Clause, Rambo's reasoning does not cover Stewart's case. Id. 1136

The court noted:

> ("It is particularly important that in the field of criminal law enforcement, where state power is preeminent, national authority be limited to those areas in which interstate commerce is truly affected."); United States v. Ballinger, 312 F.3d 1264, 1271 (11th Cir. 2002) ("To allow Congress to regulate local crime on a theory of its aggregate effect on the national economy would give Congress a free hand to regulate any activity, since, in the modern world, virtually all crimes have at least some attenuated impact on the national economy."). This "cost of crime" rationale thus cannot save the government's case. (Emphasis added) *Id. 1137*

Finally the court analyzed the legislative history of 18 U.S.C. § 922(o), recognizing it did not support Commerce Clause jurisdiction. The court stated:

> " Moreover, nothing in the legislative history of any of the earlier firearms statutes speaks to the relationship between mere possession of firearms and interstate commerce. Instead, the legislative findings focus primarily on the need for federal enforcement where firearms cross state and international borders, and

are thus difficult for individual states to regulate on their own. The legislative findings supporting the Omnibus Act, for example, address the need for federal regulation to "adequately enable the States to control the firearms *traffic* within their own borders through the exercise of their police power." S.Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2197. (Emphasis added). More specifically, Congress found that "the United States has become the dumping ground of the castoff surplus military weapons of *other nations*," which has "contributed greatly to lawlessness and to the Nation's law enforcement problems." 1968 U.S.C.C.A.N. at 2199. (Emphasis added). Congress also found that "the lack of adequate Federal control over *interstate and foreign commerce* in highly destructive weapons ... has allowed such weapons and devices to fall into the hands of lawless persons, ... thus creating a problem of national concern." Id. The Gun Control Act's findings similarly discuss only the need "to strengthen Federal controls over *interstate and foreign commerce in firearms* and to assist the States effectively to regulate firearms *traffic* within their borders." H.R. Rep. No. 90-1577 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411 (emphases added). <u>Nothing in the legislative history suggests that Congress ever considered the impact of purely intrastate possession of homemade machine guns or interstate commerce, and there is no reason to assume that prohibiting local possession of machine guns would have the same national and commercial consequences as prohibiting the interstate and foreign traffic in firearms. We therefore cannot import these earlier legislative findings to give section 922(o) constitutional grounding</u>.

    Based on the four-factor <u>Morrison</u> test, section 922(o) cannot be viewed as having a substantial effect on interstate commerce. We therefore conclude that section 922(o) is unconstitutional as applied to <u>Stewart</u>." Id. 1139, 1140 (Emphasis added).

As the facts of Harold Call's case are almost identical to the facts in the case of <u>United States v. Stewart</u>, defendant Call submits the court had no jurisdiction over him and the charges should therefore be dismissed.

**B.** THE SECOND AMENDMENT RIGHT TO BEAR ARMS PROTECTS A CITIZEN'S RIGHT TO POSSESS FIREARMS FOR SELF DEFENSE, THIS INCLUDES THE RIGHT TO LAWFULLY POSSESS AUTOMATIC WEAPONS AND MACHINE GUNS.

The Second Amendment provides: " A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms <u>shall not be infringed</u>." (Emphasis added). The defendant, Harold Call, has never been convicted or even charged with any criminal offense. The government cannot, by a broad criminal statute, limit his right to possess or bear arms because of the strong Constitutional protection afforded by the Second Amendment.

The recent case of District of Columbia v. Heller, 554 U.S. ____ (2008), makes clear that the Second Amendment right to bear arms is unequivocally a personal right. ... "[W]e start therefore with the presumption that the Second Amendment right is exercised individually and belongs to all Americans." ... Id. p.7  The Court in reversing concluded: "In sum we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering a lawful firearm in the home operable for immediate self defense." Id. p. 64  (Emphasis added).

The Supreme Court in District of Columbia v. Heller strongly affirmed the right to personal self defense, but it left open the boundaries or contours of the Second Amendment. Whether a machine gun can ever be considered a legal or protected firearm, is unclear from the ruling. The court in dicta noted that Second Amendment rights are not unlimited and that dangerous or "unusual" weapons could be constitutionally banned. *See* the earlier opinion of United States v. Miller, 307 U.S. 174 (1939), holding that a short barreled shotgun was a type of weapon not eligible for Second Amendment protection.

The Supreme Court in Heller, however, suggested that Justice Stevens in his dissent misread the extent of Miller's holding stating:

> "Justice Stevens can say again and again Miller did 'not turn on the difference between muskets and sawed-off shotguns, it turned rather on the basic differences between the military and non-military use and possession of guns,' post, at 42,43, but the words of the opinion prove otherwise.  The most Justice Stevens can plausibly claim for Miller is that it declined to decide the nature of the Second Amendment right despite the Solicitor General's argument (made in the alternative) that the right was collective. Miller stands only for the proposition the Second Amendment right, whatever its nature, extends only to certain type of weapons.
>   It is particularly wrongheaded to read Miller for more than what it said, because the case did not purport to be a thorough examination of the Second Amendment." Id. p.50

While the contours of the Second Amendment after Heller are unclear, defendant submits that the possession of the type of machine guns outlawed by statute in this indictment should be protected under the Second Amendment when possessed or used by law abiding citizens for self defense. Defendant submits Heller makes clear the line is indistinct and the law is vague as to whether the machine guns, which have been criminalized by statutes in this case, are illegal as

unusual or "dangerous" weapons. These weapons are commonly used by all branches of the United States military forces as well as many law enforcement agencies and their personnel. They are not significantly more dangerous than other types of firearms that are legal. Many such weapons, or similar weapons, can be bought and sold in many legal markets.

The Supreme Court, in its decision in <u>Heller</u> has implied that it would reconsider it's ruling in <u>United States v. Miller</u> by emphasizing that the case was not a thorough examination of Second Amendment rights. (<u>Heller</u>, <u>Id.</u> p. 50).

The careful and lengthy opinion in <u>Heller</u>, <u>supra</u>, makes clear the Supreme Court gives great weight to the Second Amendment right to bear arms and will carefully scrutinize any statutory limitations of that right.

WHEREFORE, Defendant submits this Honorable Court should find that the Defendant had a Second Amendment right to possess the weapons alleged in the indictment for his self defense.

Defendant respectfully submits the charges against him be dismissed.

**RESPECTFULLY SUBMITTED**, this 11th day of September, 2009.

By:     /s/  Terrence M. Jackson
        Terrence M. Jackson, Esquire
        *Counsel for Harold Call*

**SERVICE OF PROCESS**

Case No.: 2:09-cr-00079-KJD (RJJ)

_____I hereby certify that I am an employee of the Law Office of Terrence M. Jackson**,** that I am a person competent to serve papers and not a party to the above-entitled action and that on the 11th day of September, 2009, I served a true and correct copy of the foregoing Defendant, Harold Call's : **MOTION TO DISMISS**

**as follows:**

[   ]   Via facsimile transmission to the person(s) and facsimile transmission number(s)
         indicated below,

[ **x** ]   Via CM/ ECF, the electronic filing system for the District of Nevada, Doc. # <u>18</u>
         **as indicated below:**

GREGORY A. BROWER
UNITED STATES ATTORNEY
L. ERIC JOHNSON
ASSISTANT UNITED STATES ATTORNEY
Lloyd D. George Federal Courthouse
333 Las Vegas Boulevard, Ste. 5000, Fifth Floor
Las Vegas, NV 89101
Fax: (702) 388-6418
*Attorney for Plaintiff , USA*

                              /s/       Beverly Jackson
                              An Assistant of Terrence M. Jackson, Esquire