GREGORY A. BROWER
United States Attorney
District of Nevada
J. GREGORY DAMM
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Blvd. South, Suite 5037
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Facsimile: (702) 388-6418

Attorneys for the Government

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | 2:09-CR-0079-KJD(RJJ) |
| Plaintiff, ) | |
| v. ) | RESPONSE IN OPPOSITION TO |
| ) | DEFENDANT HAROLD CALL'S |
| HAROLD CALL, ) | MOTION TO SUPPRESS |
| ) | EVIDENCE |
| Defendant. ) | |

        Comes now the United States of America by and through its attorneys, Gregory A. Brower, United States Attorney for the District of Nevada, and J. Gregory Damm, Assistant United States Attorney, and responds in opposition to defendant Harold Call's Motion to Suppress Evidence.

        Defendant Call challenges the sufficiency of the affidavit in support of the search of his residence and requests the Court to grant him a <u>Franks</u> hearing to allow him call and examine witnesses in an effort to undermine the affidavit. Defendant contends that the materials seized from his residence should be suppressed because the affidavit in support of the search warrant for his residence omitted material information and included misstatements. Generally, defendant's argument has two primary points. Defendant first claims that the affidavit omitted information concerning the background of the confidential informants. Defendant also claims the affidavit omitted conversations between the confidential informant and the defendant where allegedly the informant repeatedly asked the defendant to manufacture auto sears, inducing the defendant to commit the crimes alleged.

The material issue before the Court should be whether affiant presented enough information to the Magistrate Judge to provide the Court with probable cause to believe that evidence that might further the Government's case against defendant Call existed at his residence. As the Ninth Circuit explained in <u>United States v. Fernandez</u>, 388 F.3d 1199 (9th Cir 2004)

> In the context of the determination of whether a magistrate judge had a substantial basis to conclude that a search warrant was supported by probable cause, probable cause exists when, considering the totality of the circumstances, the affidavit shows that there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The Ninth Circuit again reaffirmed this standard in <u>United States v. Davis</u>, 530 F.3d 1069 (9th Cir. 2008), explaining that "[p]robable cause exists when, under totality of the circumstances, there is fair probability that contraband or evidence of crime will be found in a particular place."

The Supreme Court in <u>Franks v. Delaware</u>, 438 U.S. 154, 171-72 (1978), held that there is "a presumption of validity with respect to the affidavit supporting the search warrant." The Court held that for a defendant to challenge an affidavit and obtain an evidentiary hearing, the defendant's

> attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

In <u>United States v. Craighead</u>, 539 F.3d 1073, 1080 (9th Cir. 2008) decided last year, the Ninth Circuit reaffirmed the principles of <u>Franks</u>, stating:

> A defendant is entitled to an evidentiary hearing if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56, 98 S.Ct. 2674. To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof. United States v. Kiser, 716 F.2d 1268, 1271 (9th Cir.1983).

539 F.3d 1073, 1080 (9th Cir. 2008). In United States v. DiCesare, the Ninth Circuit formulated the following test:

> There are five requirements for a sufficient motion for a *Franks* hearing: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

765 F.3d 890, 894-895 (9th Cir.1985), amended on other grounds, 777 F.2d 543 (9th Cir.1985).

Under Franks, it is not enough for the defendant to attack the credibility of an informant used in the affidavit. Pursuant to the Supreme Court's holding in Franks, an agent is presumed to have truthfully presented an informant's statements and background. Whether the informant provided truthful information is irrelevant as long as the agent reasonably believed the informant and reported the informant's information accurately. Id. at 171-72. The defendant must demonstrate a basis to believe that the affiant in failing to include information that the informant could have told him acted with specific intent or reckless disregard in omitting critically relevant information. As will be demonstrated below, defendant makes no showing of recklessness or intentional omission on the part of the affiant. Id.

As to the confidential informant designated as CH1 in the affidavit, the affiant disclosed that CH1 had worked as an informant for the FBI since 2004. CH1 had provided information which the FBI has corroborated on multiple occasions, including information leading to an arrest. In working with the FBI, CH1 hoped to mitigate the sentence he would receive for a crime he had already plead guilty to committing. In his motion, defendant only "speculate[s] what has motivated CH1 to act as an informant for five years, despite the alleged great personal danger CH1 faced." Motion, at 2. As to the confidential informant designated at CH2, the affiant disclosed that he had worked as an informant since the 1970s and information CH2 had provided had led to indictments and convictions in criminal investigations. CH2 received financial subsistence for his cooperation. Again in his motion, defendant only "imagine[s] what [CH2] is receiving for his labors as a snitch and what he has done in violation of the law that compels him to be working as an

informant for longer than the average career civil servant (nearly 30 years)." Defendant provides nothing but speculation and conclusionary statements in his attack on the reliability of the informants. He does not meet the requirements of Franks to "make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." United States v. Craighead, 539 F.3d 1073, 1080 (9th Cir. 2008). Significantly, defendant does not deny any of the representations of the informants the affiant includes in his search warrant affidavit. Defendant simply complains that the affidavit does not provide details of the informants' agreements with the FBI and their criminal backgrounds. In terms of the information the informants provided, defendant only contends that the affiant did not include information of the informants' repeated efforts to get defendant to provide them with auto sears and to show his machine gun.

Defendant contends that the affiant left out information concerning numerous occasions defendant refused to supply the confidential informant arms or auto sears. Defendant contends that the affiant should have included information demonstrating he was entrapped by the Government's informant to commit the crimes charged. However, defendant in his affidavit in support of his motion to suppress does not state that he ever refused to provide auto sears to the confidential informant or undercover agent. While defendant does state that the confidential informant did repeatedly ask him to make auto sears to convert firearms into automatic weapons, defendant never indicates that he ever refused to make the auto sears. Motion, Exhibit A.

What defendant in his affidavit does clearly establish is that he made numerous auto sears/lightning links for the informant and undercover agent as the affiant outlined in his affidavit in support of the search warrant. These auto sears and lightning links were machine guns as the term is statutorily defined at Title 26, United States Code, Section 5845(b), in that they were "part[s] designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun." Defendant in his affidavit also admits that he possessed a fully functional automatic weapon, but attempts to suggest that he normally kept the machine gun in pieces and only put it together and used it at the encouragement of the informant and undercover agent. However, whether in parts form or put together as an automatic weapon, defendant possessed a machine gun as the term is statutorily

4

defined. Title 26 United States Code 5845(b), further defines a machine gun to include "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" and "any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

Defendant claims that he believed the auto sears and lightning links he manufactured were legal items because of ads in gun magazines advertising the sale of such items. However, as defined above, such items are illegal machine guns. Under the statutes charged, Title 18, United States Code, Section 922(o) and Title 26, United States Code, Section 5845(d), defendant does not need to know the illegal nature of the items he possessed; he merely needs to know the nature of the items he possessed. The statutes only require that the defendant have knowledge that the instrument he possessed was what the statute defines as a machine gun. United States v. Freed, 401 U.S. 601, 607-09 (1971); United States v. Gravenmeir, 121 F.3d 526, 530 (9th Cir. 1997). As the Ninth Circuit explained in  United States  v. Gilbert, 286 Fed. Appx. 383, 386 (9th Cir. 2008):

> In firearms prosecutions, the government is not required to prove that a defendant knew that his possession of the firearms at issue was unlawful. United States v. Freed, 401 U.S. 601, 607, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). Accordingly, the charges against [defendant] did not require, as an element of proof, evidence that [defendant] knowingly broke the law, only that he knowingly possessed weapons and knew the characteristics of those weapons.

Consequently, for purposes of evaluating probable cause, whether defendant knew or believed the items he manufactured or possessed were illegal to manufacture or possess is irrelevant and the issue is whether defendant knew the items he manufactured or possessed were: 1) weapons which shoot, are "designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger;" or 2) "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun;" or 3) "any combination of parts from which a machinegun can be assembled."[1]

---

[1] The Government also disputes defendant's claim that he did not know that he was manufacturing contraband when he made the auto sears. As noted in the affidavit in support of search warrant at page 10, defendant on September 11, 2008, after supplying the first set of auto sears to the informant and

5

As for defendant's contention that the affiant left out information concerning the informant's repeated requests for defendant to make auto sears, establishing entrapment, the Government notes that entrapment is an affirmative defense.  Entrapment is a defense excusing a defendant's conduct meeting the elements of a criminal statute.  As a defense, entrapment is an issue for the jury to consider in reaching its verdict.  While defendant's allegations concerning the informant's supposed repeated request for auto sears might be the basis for an entrapment defense, that potential affirmative defense does not change the fact that [the defendant engaged in criminal conduct at his residence], which is sufficient on its face for a finding of probable cause to issue a warrant. <u>United State v. Christie</u>, 570 F.Supp.2d 657, 672 (D.N.J. 2008); <u>see also United States v. Marin</u>, 138 Fed. Appx. 945 (9th Cir. 2005)   Entrapment consequently is not relevant to the issue of determining probable cause to justify a search warrant. Adding defendant's alleged information concerning possible entrapment to the warrant affidavit does not change the probable cause analysis. "Whatever merit the entrapment defense may have at trial, it was not material to the question of whether a search warrant should be issued. Even had the magistrate judge been informed of these alleged unsuccessful attempts to engage [defendant] in [firearms transactions], the corroborated

---

undercover agent, provided a manual that included specifications for building various auto sears type devices.  Exhibit A, at 10.  On the first page of the manual, under the index, is a "NOTICE" which states:

> This book contains information that gives explicit details on the construction and/or conversion of fully automatic firearms.
>
> This is offered as information for academic study only.
>
> On May 19th, 1986, a new N.F.A. full-auto firearms law went into effect.  As of that date it is no longer legal for an unlicensed individual to convert a semi-automatic firearm into a machinegun or sub-machinegun.
>
> The B.A.T.F. Form 1 will not be accepted by the Bureau of Alcohol, Tobacco and Firearms if it was not postmarked by midnight, May 19, 1986.
>
> Full-auto converstions listed in this book may legally be used only in TITLE II receivers by licensed TITLE II Manufacturers.
>
> If you have any doubts about your positions in this matter, contact your local B.A.T.F. office for further information.

evidence supported probable cause to believe [the defendant] was violating [the law], and that evidence of this crime would likely be found during a search" of the defendant's residential property. United States v. McCollum, 2005 WL 3159662 (D. Neb.2005).  Defendant "has identified no legal principle or authority which requires suppression of validly obtained evidence where entrapment is alleged." United States v. Carroll, 1992 WL 333958 (D. Mass.1992).

Defendant argues that the affiant failed to include in the affidavit that defendant belonged to the Nevada Lawman Group, a lawful political organization protected by the First Amendment.  The affiant, however, does reference defendant's involvement in the Nevada Lawman Group (NL).  While the affiant does generally reference some of the group's anti-government political beliefs, the affiant makes clear that defendant and others involved in the group or related group were being investigated for fraudulent activities relating to the use of fraudulent promissory notes, bonds or other means of financial payment.  The affiant includes information from CH2 and the undercover agent about defendant's discussions concerning his personal use and knowledge of such fraudulent means of payment to pay the IRS and other debts and the filing of zero entry tax returns.  Exhibit A, at 4, 5, 8-9, 11-12, 13-16. While defendant has not been charged with crimes concerning his involvement with fraud, the affidavit in support of the search warrant clearly provided sufficient information to justify searching defendant's residence for evidence of his fraud.

Defendant also criticizes the affiant for failing to note the existence of a substantial legal question concerning whether defendant's possession of the auto sears or machine gun were illegal under District of Columbia v. Heller, 554 U.S. ___ (2008).  Defendant's contention follows to some degree his position in his pending motion to dismiss.  In his motion to dismiss, defendant first argues that under United States v. Stewart, 348 F.3d 948 (9th Cir. 2003), his possession of homemade auto sears and a machine gun was legal because defendant did not obtain his auto sears or machine gun using channels of interstate commerce.  In the original 2003 decision in United States v. Stewart, the Ninth Circuit concluded that because the defendant there had made his machine gun rather than receive it through a transfer from another that the defendant's possession of his machine gun was purely an intrastate possession which Congress could not regulate through the Constitution's

7

Commerce Clause. The Court found that Title 18, United States Code, Section 922(o) was unconstitutional as applied to the defendant in that case. While arguably the Ninth Circuit's original decision in <u>United States v. Stewart</u> could apply to defendant's manufacturing of the auto sears and machine gun in his residence, the Ninth Circuit overruled its original decision on remand from the Supreme Court. In 2006, the Ninth Circuit ruled in <u>United States v. Stewart</u>, 451 F.3d 1071 (9th Cir. 2006), that Section 922(o) which criminalizes the possession of homemade machineguns manufactured intrastate was not an unlawful extension of Congress's commerce powers. Consequently, defendant's possession of what he contends were homemade auto sears and a machine gun is criminal under federal statute.

Defendant also claims that under <u>District of Columbia v. Heller</u>, the federal government cannot limit his possession of machine guns under the Second Amendment. However, courts considering the issue of the constitutionality of machine gun regulation since <u>Heller</u> have concluded that Congress can constitutionally regulate the possession of machine guns. In <u>United States v. Gilbert</u>, 286 Fed.Appx. 383, 386 (9th Cir.2008), the Ninth Circuit court explained that <u>Heller</u> did not undermine the restrictions contained in Title 18, United States Code, Sections 922(g)(1) and 922(*o*). In <u>United States v. Fincher</u>, 538 F.3d 868, 874 (8th Cir.2008), the Eighth Circuit held that Section 922(*o* ) was a constitutional restriction on machine guns. See also <u>United States v. Ross</u>, 323 Fed. Appx. 117 (3d Cir. 2009); <u>United States v. Williams</u>, 2009 WL 578556 (W.D.Pa. 2009).

The Supreme Court in <u>Heller</u> found that the District of Columbia's complete ban on handgun possession in the home violated the Second Amendment. The Court held that the "Second Amendment conferred an individual right to keep and bear arms." <u>Heller</u>, 128 S. Ct., at 2799. However, the Court also made clear that this right is not unlimited:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

<u>Id.</u>, at 2816 (citations omitted). The Supreme Court stated that certain statutory restrictions on firearms are constitutional:

8

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.
>
> We also recognize another important limitation on the right to keep and carry arms. Miller [United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939) ] said, as we have explained, that the sorts of weapons protected were those "in common use at the time." 307 U.S., at 179, 59 S.Ct. 816, 83 L.Ed. 1206. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."

The Supreme Court in Heller did not find that possession of machine guns is protected by the Second Amendment. "Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." United States v. Fincher, 538 F.3d 868, 873-74 (8th Cir.2008); see also United States v. Gilbert, 2008 WL 2740453 (9th Cir.2008). Significantly, after Heller, every court which has considered a Second Amendment challenge to the various subsections of Section 922, including Section 922(o), has upheld the statute as constitutional. United States v. Marzzarella, 2009 WL 90395 (W.D.Pa. Jan.14, 2009) (citing cases). These courts have concluded that Heller does not establish an unconditional right to possess a firearm. Under Heller, defendant has no right to possess a machine gun.

Defendant has provided no factual showing or legal basis to justify a Franks hearing on his motion or to challenge the search warrant affidavit in this case. Defendant's motion should be denied

DATED this 24th day of September 2009.

Respectfully Submitted,

GREGORY A. BROWER
United States Attorney


*/s/ J. Gregory Damm*
J. GREGORY DAMM
Assistant United States Attorney

9