UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>HAROLD CALL,<br><br>    Defendant. | 2:09-cr-00079-KJD-RJJ<br><br>REPORT &  RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE<br>(Defendant's Motion to Suppress #17) |

This matter was referred to the undersigned Magistrate Judge on Defendant's Motion to Suppress (#17). The Court has considered the Defendant's Motion (#17) and the Government's Opposition (#22).

**BACKGROUND**

Defendant Harold Call was indicted on March 3, 2009. The five count Indictment charges Call with two counts of possession and transfer of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) and three counts of possession of an unregistered machine gun in violation of 26 U.S.C. §§ 5861(d) and 5871. The Government also seeks criminal forfeiture of certain property pursuant to 26 U.S.C. §§ 5861 and 5872 as well as 28 U.S.C. § 2461(c).

During the investigation, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF Agent) applied for a search warrant. The supporting affidavit sets forth substantial detail surrounding the investigation of Defendant Call and others. After review, the judge issued the search warrant.

According to the two confidential informants were utilized during the investigation.

Although the true identity of the informants was known, their identities were not revealed for fear of reprisal. Instead, the affidavit refers to the confidential informants as "CHS #1" and "CHS #2". The affidavit provides that CHS #1 "has been proven reliable on multiple occasions due to law enforcement corroborating his/her information .... [t]he informant has successfully assisted with multiple prosecutions ... [the informant] has worked with the [FBI] since 2004 .... [and] [t]he informant has further provided intelligence in other cases regarding criminal activity that proved reliable in leading to an arrest." CHS #1 was compensated by the Government and anticipated a reduced sentence for cooperation in this case. The affidavit also provides that CHS #2 has "proven extremely reliable and has worked with the Federal government as an informant since the 1970's." Additionally, multiple "[i]ndictments and convictions have been obtained in various State and Federal investigations based upon information provided" by CHS #2. CHS #2 was compensated for cooperation in this case.

The affidavit provides that during the course of the investigation Call sold, manufactured, and possessed allegedly illegal firearms, including machineguns, at his residence in violation of 18 U.S.C. § 922(a)(1)(A), 18 U.S.C. § 922(o), and 26 U.S.C. § 5861. The affidavit also provides substantial details regarding:

1. When it became clear that Call was familiar with the process of manufacturing parts designed and intended for use in converting a weapon into a machinegun;
2. CHS #2's request that Call provide CHS #2 with some "trippers" – a slang term for an "auto sear" – a device used to convert a firearm to a fully automatic firearm;
3. A shooting session attended by CHS #2, an undercover FBI employee, and Call where:
    a. The undercover FBI employee witnessed Call retrieve two objects immediately recognizable as drop-in "auto sears";
    b. The undercover FBI employee witnessed Call place the "auto sear" into an AR-15 rifle;
    c. The undercover employee witnessed the modified AR-15 malfunction;

. . . .

- 2 -

       d.      Call stated to the undercover FBI employee and CHS #2 that next time they went shooting Call would bring his fully automatic STEN machine gun;

4. Specific dates when CHS #2 contacted Call to inquire regarding the "auto sears" that Call was manufacturing for CHS #2;

5. Conversations between CHS #2 and Call regarding Call's progress in manufacturing the "auto sears" requested by CHS #2;

6. A conversation between CHS #2 and Call regarding an additional "auto sear" purchase, as well as, Call's agreement to provide instructions for adapting the "auto sears" to specific firearms;

7. A consensually monitored conversation between CHS #2 and others under investigation for various fraudulent activity wherein CHS #2 spoke with Call about "auto sears" for an AR-15 firearm. Call stated that the "auto sears" may need to be filed in order to fit each particular firearm. Call also told CHS #2 not to worry about payment for the "auto sears" until they were fitted into CHS #2's firearms and functioning properly;

8. A second shooting session attended by CHS #2, an undercover FBI employee, and Call where the individuals met at Call's residence. At the residence the undercover FBI employee observed two reloading presses, supplies, and numerous rounds of various calibers. The undercover employee also witnessed Call display a receiver for a machine gun. During the shooting session:

    a.    Call produced a STEN machine gun–all three individuals fired the weapon in automatic mode;

    b.    Call produced a number of "auto sears" for an AR-15 firearm. Call placed the "auto sear" in his AR-15 firearm and successfully achieved fully automatic firing with the weapon. The undercover employee also fired the modified AR-15;

. . . .

. . . .

  c. Call provided CHS #2 with three devices, later identified by ATF personnel as "lightning links" designed and intended to convert firearms into machineguns,

  d. The undercover FBI employee purchased three "lightning links" for $300.00 from Call while at Call's home;

  e. Call provided CHS #2 and the undercover employee with a manual that provided specifications for building various "auto sear" devices and instructions on how to use them;

9. A conversation between CHS #2 and Call for the purpose of setting up a third shooting session;

10. A third shooting session attended by CHS #2, an undercover FBI employee, and Call where the individuals met at Call's residence. At Call's residence the undercover FBI agent observed two reloading presses, supplies, and numerous rounds of various calibers. During the shooting session:

  a. Call produced a STEN machine gun and all three individuals fired the weapon in automatic mode.

  b. Call also produced a drop-in "auto sear" and placed it in his AR-15 firearm; and,

11. CHS #2's purchase of six drop-in "auto sears" from Call for $750.00. ATF personnel later identified the purchased "auto sears" as parts designed and intended to covert a weapon into a machinegun.

  The affidavit also provides substantial details regarding the investigation of Call's involvement in "the Sovereign Movement." The affidavit identifies Call as the leader of the "Lawmen Group" and provides details of the group's meetings wherein "debt elimination redemption" schemes are taught. The affidavit states that an undercover employee attended numerous of the group's meeting and listened as various individuals lectured on how to file fictitious obligations with the government and private companies to discharge debt. The undercover employee witnessed individuals in attendance at these meetings prepare documents for purpose of fraudulent

1  debt discharge.  The affidavit also explains certain "Sovereign Movement" ideology and details the
2  group involvement in the "redemption" scheme.[1]

3  The affidavit provides that in furtherance of this "redemption" scheme, Call provided
4  examples of documents as well as instructions to CHS #1 regarding initializing the "bonding"
5  process.  Call also advised two undercover officers that he was utilizing a birth certificate bond
6  process in his dealings with JP Morgan Chase Bank.  Call advised that if the birth certificate bonding
7  process worked, individuals could have their debts discharged through the bonding process.  During
8  its investigation, the Government subpoenaed documents from JP Morgan Chase Bank.  The
9  affidavit provides that the documents obtained demonstrated that Call had sent, via certified mail,
10 several "bonding" documents to JP Morgan Chase Bank in an attempt to discharge his debt and
11 defraud Chase.

12 Defendant Call filed this Motion to Suppress (#18) requesting that the court conduct an
13 evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to determine whether the
14 affidavit submitted in support of the Government's request for a search warrant was sufficient to
15 establish probable cause.  Call alleges that the supporting affidavit is deficient because it "is filled
16 with material omissions and/or misstatements."  Specifically, Call alleges that the supporting
17 affidavit: (1) deliberately omits material information regarding the confidential informants'
18 background; (2) deliberately omits conversations wherein Call denied requests from confidential
19 informants to engage in criminal activity; (3) deliberately omits that Call has no criminal history or
20 record; (4) deliberately omits that the purported anti-government ideology of the "Sovereign
21 Movement" is protected by the First Amendment; and (5) deliberately omits that Call has a Second
22 Amendment right to possess machineguns.  According to Call, the deliberate omission of the

---

[1] The "redemption" scheme is based upon the belief that the United States Government was secretly forced to declare bankruptcy in 1933 and that all Federal Reserve Notes are invalid as a result.  Proponents of the theory believe that because the Government secretly declared bankruptcy, it was forced to use its own citizens as collateral to avoid default on existing loans.  Consequently, adherents to the theory believe that the United States Government establishes secret accounts - known as US Treasury Direct Accounts - for anywhere between $630,000.00 and $1,000,000.00 for all citizens at birth.  Under the theory individuals may use a birth certificate or social security card to access their secret account and gain access to their hidden account by submitting various documents to creditors, state officials, and the United States Treasury Department.  This is referred to as the bonding process.

1  foregoing information renders the affidavit defective and requires suppression of all evidence
2  obtained as a result thereof. Defendant Call has submitted a sworn affidavit in support of his request.
3  Ex. A attached to Defendant's Motion (#17).

4  In opposition, the Government contends that Call has not met the requirements of specificity
5  for purposes of requesting a *Franks* hearing. The Government contends that (1) Call provides
6  nothing more than speculation and conclusory statements in his attacks on the reliability of the
7  confidential informants; (2) Call acknowledges that he never refused to make the suspect
8  machinegun parts; (3) Call concedes that he did manufacture and possess the suspect machinegun
9  parts; (4) Call's entrapment theory is an affirmative defense that does not figure into the
10 determination of whether probable cause exists for the issuance of a search warrant; and (5) the
11 Second Amendment does not grant individuals the right to possess machineguns.

## DISCUSSION

13 The sole issue presented in this motion is whether the evidence seized or obtained pursuant
14 to the search warrant should be suppressed because of intentional or reckless omissions in the search
15 warrant affidavit. A defendant is entitled to an evidentiary hearing on the validity of the affidavit
16 underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the
17 affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the
18 affidavit cannot support a finding of probable cause without the allegedly false information. *See*
19 *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000); *see also Franks v. Delaware*, 438 U.S.
20 154 (1978); *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985) (holding that a defendant could
21 challenge a facially valid affidavit by making a substantial preliminary showing that the affiant
22 intentionally or recklessly omitted facts required to prevent technically true statement in the affidavit
23 from being misleading). "To justify a hearing, a defendant must make specific allegations, allege
24 a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed
25 offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted).

26 **1. Omission of Confidential Informants Background Information**

27 Call alleges that the affiant's omission of the identity, background, criminal history, or other
28 information of the confidential informants renders the affidavit insufficient to support a finding of

probable cause. "If an informant's history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements." *Reeves*, 210 F.3d at 1044. Generally, when a defendant challenges the validity of a warrant by questioning the reliability of the confidential informant the court conducts an *ex parte*, *in camera* hearing to determine whether the defendant "has made a 'threshold substantial showing of falsehood.'" *Id*. (citations and quotations omitted). However, when there is sufficient independent corroboration of an informant's information or countervailing evidence to bolster the informant's credibility, it is not necessary to conduct the *ex parte*, *in camera* hearing. *See United States v. Johnson*, 2007 WL 594909 (D. Nev.) (citations omitted).

In this case, the information provided by the confidential informants was independently corroborated by law enforcement. One of the confidential informants (CHS #2) arranged three separate "shooting sessions" with Defendant Call. Each Of these sessions was attended by an undercover law enforcement employee. During the first "shooting session", the undercover law enforcement employee witnessed Call: (1) produce a fully automatic Russian AK - 47, (2) produce objects identified by the undercover employee as "auto sears", (3) produce an AR-15 rifle and attempt to modify it with an "auto sear", (4) attempt to fire the modified AR-15 rifle in fully automatic mode utilizing live ammunition, and (5) admit to owning a STEN machinegun.

Prior to the second "shooting session," the undercover law enforcement employee and the confidential informant met Call at his residence. While at Call's residence, the undercover employee observed (1) loading presses, supplies and various caliber rounds at the residence, (2) a receiver for a Browning belt fed machinegun, and (3) a bag of .308 caliber belted ammunition which Call confirmed was for the Browning belt fed machine gun. During this "shooting session" the undercover employee also witnessed Call produce a STEN machinegun which each individual shot in fully automatic mode. The undercover employee also witnessed Call produce multiple "auto sears" for an AR-15 rifle and achieve fully automatic mode after inserting one of the "auto sears" into the AR-15. The undercover employee also purchased three devices from Call later confirmed by ATF personnel to be '"lightning links" designed and intended to convert a weapon into a machinegun. During a third "shooting session", the undercover employee again observed reloading

1   presses, supplies, and various caliber rounds at Call's residence.  The undercover employee again
2   witnessed Call produce and fire a STEN machinegun as well as produce an "auto sear."  The "auto
3   sear" was placed in Call's AR-15 rifle which was then rendered fully automatic.  At the conclusion
4   of this "shooting session" the undercover employee witnessed Call return all of the weapons and
5   supplies to his garage.

6   Subsequent to the shooting sessions, the confidential informant purchased an additional six
7   (6) "auto sears" from Call.  The purchased items were sent to the ATF lab for analysis where it was
8   determined they were "auto sears" designed and intended to covert a weapon into a machinegun.
9   Additionally, throughout the course of the investigation, law enforcement personnel consensually
10  monitored multiple conversations between the confidential informant, Call, and others wherein,
11  among other things, firearms, machineguns, and auto sears were discussed.  During these
12  conversations, the confidential informant placed orders for multiple "auto sears" and received
13  instruction from Call on how to use the "auto sears" to render a firearm fully automatic.  It is clear
14  that the specific information provided by the confidential informants in this matter was corroborated
15  through the independent investigative efforts of the investigating officers.  Accordingly, there was
16  ample basis for a judge to conclude that contraband or evidence would be recovered from the area
17  to be searched.  *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

18  Moreover, "[i]f the informant has provided accurate information on past occasions, he may
19  be presumed trustworthy on subsequent occasions.  *When the information provided in the past*
20  *involved the same type of criminal activity as the current information, the inference of*
21  *trustworthiness is even stronger.*"  Johnson, 2007 WL 594909 *4; (*citing Reeves*, 210 F.3d at 1045
22  (*quoting United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986) (emphasis in *Reeves*))).
23  Here, the identity and specific criminal background of the confidential informants was not set forth
24  in the affidavit.  Instead, the affidavit refers to the confidential informants as "CHS #1" and "CHS
25  #2".  The affidavit does provide that CHS #1 "has been proven reliable on multiple occasions due
26  to law enforcement corroborating his/her information .... [t]he informant has successfully assisted
27  with multiple prosecutions ... [the informant] has worked with the [FBI] since 2004 .... [and] [t]he
28  informant has further provided intelligence in other cases regarding criminal activity that proved

1  reliable in leading to an arrest." The affidavit also provides that CHS #2 has "proven extremely
2  reliable and has worked with the Federal government as an informant since the 1970's."
3  Additionally, multiple "[i]ndictments and convictions have been obtained in various State and
4  Federal investigations based upon information provided" by CHS #2. Both confidential informants
5  were compensated for their cooperation. Since the informants had provided accurate information
6  on multiple prior occasions, there is a strong inference of trustworthiness. This strong inference,
7  combined with the independent corroboration of the confidential informants specific information in
8  this case, leads the court to conclude that, even if the cofidential informants had checkered pasts, the
9  magistrate judge would have determined each trustworthy and credible in this instance.

10  Finally, even if the defendant would have made a substantial showing that the omission of
11  the confidential informants' background was pertinent, the omission would not be material. Based
12  on the interaction and transactions between the undercover law enforcement officer and Call there
13  was probable cause on the face of the affidavit. In other words, even without any reliance on the
14  statements of either confidential informant, there was probable cause on the face of the affidavit
15  supporting issuance of the warrant. The court cautions, as it has before, that "it is clear that the
16  Ninth Circuit does not approve of an informant's criminal history being completely excluded from
17  an affidavit." *Johnson*, 2007 WL 594909 *5 (*citing Reeves*, 210 F.3d at 1046). In this instance,
18  because the informant's information was corroborated by independent evidence, including a FBI
19  employee, the omission of the informant's criminal background is not material. Accordingly, the
20  court finds that Call has not met his burden to make a substantial preliminary showing that omission
21  of the confidential informants' criminal history is material.

22  **2. Omission of Call's Alleged Refusal to Manufacture or Supply Arms or Auto Sears**

23  Call argues that the affiant deliberately omitted (1) several instances where Call refused to
24  supply arms or auto sears to the confidential informant; (2) Call's lack of a criminal record; (3) the
25  protected nature of any purported anti-government ideology or speech; and (4) the legal question
26  regarding whether Call's possession and distribution of any weapons is permissible in light of the
27  recent Supreme Court decision in *District of Columbia v. Heller*, 554 U.S. --- , 128 S.Ct. 2783
28  (2008). According to Call, any combination of the allegedly deliberate omissions negates probable

1   cause. Intentional or reckless omissions may provide grounds for a *Franks* hearing. *United States*
2   *v. May*, 2009 WL 1542557 (D. Nev.) (*citing United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007));
3   *see also United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985 ("By reporting less than the total
4   story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be
5   misled in such a manner could denude the probable cause requirement of all real meaning.").
6   Although "[c]lear proof of deliberate or reckless omission is not required," a "[d]efendant 'must
7   offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious
8   reason for omitting facts in order to prove a deliberate falsehood or reckless disregard." *May*, 2009
9   WL 1542557 *9 (citations omitted). A defendant must also show that the "affidavit, once corrected
10  and supplemented," would not "provide ... a substantial basis for concluding that probable cause
11  existed." *Id*. (citation omitted). "[T]he omission rule does not require an affiant to provide general
12  information about every possible theory, no matter how unlikely, that would controvert the affiant's
13  good-faith belief that probable cause existed for the search." *United States v. Craighead* 539 F.3d
14  1073, 1081 (9th Cir. 2008).

**A. Omission Of Instances Where Call Allegedly Refused To Supply Arms Or Auto Sears To The Confidential Informant**

17  Call contends that he refused to supply arms or auto sears to the Government's confidential
18  informant on numerous occasions. According to Call, the omission of this information renders the
19  affidavit misleading because it fails to set forth the "extensive entrapment" laid by the Government.
20  Even supplementing the affidavit with this information does not negate probable cause. In his
21  attached affidavit, Call concedes that he manufactured and sold "auto sears" and "lightning links."
22  Call concedes that he used the manufactured parts to modify an AR-15 rifle and render the weapon
23  fully automatic. Call concedes that he possesses a STEN machinegun. While the Government's
24  conduct may be the basis for an entrapment defense, that potential affirmative defense does not
25  change the fact that Call manufactured, possessed, and sold a machinegun, as that term is defined
26  in 26 U.S.C. § 5845(b). Although the entrapment defense may prove meritorious at trial, it is not
27  material to the question of whether a search warrant should be issued which is otherwise sufficient
28  on its face. *See cf., United States v. Christie*, 507 F.Supp.2d 657, 672 (D.N.J. 2008); *see also United*

1  *States v. McCollum*, 2005 WL 3159662 (D. Neb. 2005) ("Whatever merit the entrapment defense
2  may have at trial, it was not material to the question of whether a search warrant should be issued,
3  Even had the magistrate judge been informed of the alleged unsuccessful attempt to engage [the
4  defendant] in guns for drugs transaction, the corroborated evidence supported probable cause.")
5  Here, despite Call's alleged refusals to engage in the conduct asserted by the Government, he has
6  admitted to the manufacture, sale, and possession of a machinegun. The court finds that these facts,
7  independently corroborated by law enforcement prior to the warrant request and included in the
8  search warrant affidavit, render the affidavit sufficient on its face.

### B. Call's Lack Of A Criminal Record

Call contends that the failure to include his age and lack of a criminal record in the search warrant affidavit is a material omission negating probable cause. Call provides no factual or legal basis establishing that the Government must include a defendant's lack of a criminal record in a search warrant affidavit. The omission of a defendant's criminal history, standing alone, cannot fairly be classified as misleading or material to the finding of probable cause. The absence of <u>any</u> information regarding Call's criminal history simply means that it was not taken into consideration by the magistrate judge in determining whether there was probable cause. Moreover, including the information does not negate the finding of probable cause. It is not so unusual that a defendant without a criminal history might engage in criminal behavior.

### C. Constitutional Issues

Call asserts that the failure to include that his right to belong to the "Lawman Group, a branch of the Sovereign Nation" is protected by the First Amendment is a material omission negating probable cause. The affidavit in support of the search warrant clearly identifies that Call is a member of the subject group. The affidavit makes clear that Call and others are being investigated, not because of any anti-government ideology, but for alleged fraudulent activities and, in Call's case, firearms violations based on specific statutes. That Call's political views may lead him to conclude that such activities are not illegal doesn't make it so, and does not insulate against a finding of probable cause.

Call also asserts that the failure to include the substantial legal questions that any weapons

1  he was alleged to possess and/or distribute were legal" pursuant to *District of Columbia v. Heller*,
2  554 U.S. --- , 128 S.Ct. 2783 (2008).  This alleged "substantial legal question" has been answered
3  by numerous federal courts.  *See United States v. Gilbert*, 286 Fed. Appx. 383 (9th Cir. 2008)
4  ("Under *Heller*, individuals still do not have the right to possess machineguns....") *cert. denied*
5  *Gilbert v. United States*, 129 S.Ct 613 (2008); *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008)
6  (under *Heller*, the possession of a machinegun and unregistered sawed-off shotgun is not protected
7  by the Second Amendment) *cert. denied Fincher v. United States*, 129 S.Ct. 1369 (2009); *United*
8  *States v. Ross*, 323 Fed. Appx 117 (3rd Cir. 2009) ("Nothing in *Heller* supports [defendant's]
9  challenge to the constitutionality of a statute criminalizing the possession of a machine gun.") *cert.*
10 *denied Ross v. United States*, --- S.Ct. --- , 2009 WL 2730873 (Oct. 5, 2009); *United States v.*
11 *Willaman*, 2009 WL 578556 (W.D. Pa. 2009) ("The Supreme Court in *Heller* did not find that
12 possession of machine guns is protected by the Second Amendment."). Accordingly, Call's argument
13 is not sufficient to negate probable cause.
14      Moreover, an affidavit in support of a search warrant is not a legal brief.  The reviewing
15 Magistrate Judge is familiar with the law.  The affidavit need simply make a sufficient and accurate
16 factual showing that, under the totality of the circumstances, there is a fair probability that
17 contraband or evidence is located in a particular place.  *May*, 2007 WL 1542557 *9 (citation
18 omitted).  That standard was met here.

19                                         **CONCLUSION**

20      In sum, Call has not made a substantial preliminary showing that the affidavit contains false
21 statement or material misleading omissions that, if included, would have negated probable cause.
22 Accordingly, the court finds that a *Franks* hearing is unnecessary.

23                                         **RECOMMENDATION**

24      Based on the foregoing and good cause appearing therefore,
25      IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the
26 Defendant's Motion to Suppress (#17) be **DENIED**.

27                                              **NOTICE**

28      Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must**

**be in writing and filed with the Clerk of the Court on or before December 7, 2009.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 24th day of November, 2009.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge